CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHRISTINE CHEN (CABN 327581)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7291
FAX: (415) 436-7234
Christine.Chen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN MULLIGAN,<br><br>Defendant. | Case No. 3:26-MJ-71172-MAG<br><br>**MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION**<br><br>Hearing Date: September 11, 2026<br>Hearing Time: 11:00 a.m.<br>Courtroom: G, 15th Floor<br><br>Hon. Lisa J. Cisneros |

Although the defendant Brian Mulligan has little criminal history, he has engaged in serious criminal conduct for at least the past three years. Pretrial Services' proposed conditions do not sufficiently mitigate his risk of flight or danger to the community.

## I. FACTUAL BACKGROUND

The government proffers facts herein in support of the argument that the defendant is a flight risk and danger to the community.[1]

[1] The Federal Rules of Evidence do not apply to pretrial detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B) ("The Rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* Fed. R. Evid. 1101(d)(3) (exception to application of federal evidence rules for "miscellaneous proceedings such as . . . considering whether to release on bail or otherwise."). Defendants at pretrial detention hearings are expressly authorized by the Bail Reform Act of 1984 to "present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2)(B). Because the Act ratified existing practice, the government is likewise

**A. Defendant is a Prolific Distributor of Child Pornography**

Based on a review of Mr. Mulligan's iCloud and Google accounts, as well as NCMEC CyberTips, Mr. Mulligan appears to have regularly shared child sexual abuse material ("CSAM") with other pedophiles over Zoom since at least 2023. The evidence includes at least one clip of a Zoom meeting found in his iCloud account, where he hosted the meeting as "SF Tweakwood Mac," shared his screen, and played a video showing an adult penis being inserted into the genitals of a 0–3-year-old child. His iCloud account had 645 videos and 1 image of apparent CSAM in total. He has used dozens of email addresses and multiple phone numbers to obscure his online conduct. Law enforcement believe he was hosting Zoom as recently as September 1, 2026, because his laptop showed that he had just ended a Zoom meeting.

As per the bail report, Mr. Mulligan has had no legitimate employment since 2019. Yet, he has multiple PayPal and Venmo accounts (which are not disclosed in the bail report) with significant amounts coming in. For instance in his PayPal account that has the most money movement, he received $29,117 between March 21, 2023, and May 20, 2026. Of that, $23,173 was withdrawn, leaving a balance as of May 20, 2026, of about $6,000. The money senders include notes suggesting that their payments are related to Mr. Mulligan's Zoom activities, *e.g.*, "My pleasure to help you and the room. Greetings from Berlin – it's bbyfuc0+," "Thanks for sharing vids," "Hey man, what's up. I know you from the zooms you hosted and I donated to you once which is why you were saved in my paypal . . . ." In his most-used Venmo account, he received $33,892 and withdrew $22,090 between January 1, 2023, and May 20, 2026—meaning he had about $11,000 in this Venmo account as of May 20, 2026. Multiple of his PayPal or Venmo accounts are under the name of his deceased friend, K.E.[2] Mr. Mulligan also has several cryptocurrency wallets with unknown balances.

While the government currently has no strong evidence of hands-on conduct, Mr. Mulligan was found with a camera set-up in his room when discovered by law enforcement on September 1, 2026. In

---

authorized to present information by proffer.

[2] Investigation also shows that Mr. Mulligan regularly uses the identity of a deceased friend, K.E. For example, some of his many email addresses are registered under the name, K.E., and one of his Google accounts includes a picture of a Social Security application for a physical social security card for K.E. Law enforcement know that these accounts do not belong to K.E. as the accounts contain activity after K.E.'s death.

addition, his laptop contains a video of Mr. Mulligan having anal intercourse with another individual. Although this individual's face was down and never visible in the video, he is smaller in stature than Mr. Mulligan. And as per the interview of a child pornography target, Mr. Mulligan once shared with this person online a photograph of someone Mr. Mulligan represented as his son (but the bail report suggests that Mr. Mulligan has no children).

According to the bail report, Mr. Mulligan was diagnosed with post-traumatic stress disorder in 2023, and, although he initially participated in weekly counseling, he has not done so in the past three years, *i.e.*, since 2023. He has substance abuse issues and claims to be willing to participate in treatment despite not having participated in treatment before and having overdosed before.

Although Mr. Mulligan has family in the Bay Area,[3] he was transient for two years, and, prior to that, he lived in veteran's housing at 250 Kearny Street in San Francisco, California. Investigation suggests that he was evicted from veteran's housing for multiple violations, including threatening staff and calling the front desk person the N-word. Prior to September 1, 2026, law enforcement were unaware of Mr. Mulligan's current whereabouts.

**B. Procedural History**

On September 1, 2026, law enforcement executed a residential search warrant for an unnamed child pornography target and discovered that Mr. Mulligan was also a resident of this address. Mr. Mulligan admitted to having seen "underage stuff" when interviewed. Mr. Mulligan was initially held on a state warrant from embezzlement that appears to date back to 2019, suggesting he has been able to evade arrest since then. The government obtained a search warrant for Mr. Mulligan's room and a complaint against Mr. Mulligan that same day. The complaint charges Mr. Mulligan with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). He made his initial appearance in this case on September 2, 2026.

Pretrial Services issued a bail report suggesting conditions of release that include, among others, residential substance abuse treatment at New Bridge following an assessment and possession of only one

[3] The bail report contacted Mr. Mulligan's father for verification purposes. Notably, Mr. Mulligan claimed to a hotel he was apparently living in that he had left a lot of his items in the room and intended to come back for them but was under a lot of stress due to his "fathers passing" [sic] in 2024.

internet-capable device subject to monitoring.

The government intends to indict Mr. Mulligan on charges of distribution, receipt, and possession of child pornography. Distribution and receipt each carry a five-year mandatory minimum. A preliminary Guidelines calculation suggests he is facing 292–365 months of imprisonment.

## II. LEGAL STANDARDS

Under the Bail Reform Act of 1984, this Court must detain a defendant pretrial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant presents a risk of non-appearance need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## III. ARGUMENT

### A. Defendant is a Flight Risk

Pretrial's proposed conditions will not mitigate Mr. Mulligan's significant risk of flight. For one, Pretrial's consideration of family ties in the area and willingness to participate in treatment are overvalued. Although the government acknowledges Mr. Mulligan's ties to the District, Mr. Mulligan's relationship with his family appears to be considerably frayed. This is demonstrated by the fact that he

has been homeless for years even though his father and brother live in the Bay Area and that his father did not immediately agree to co-sign a bond. The fact of his family's residence here is no guarantee that he will stay in the Bay Area, let alone show up to Court. In addition, Mr. Mulligan has indicated that he is willing to participate in substance abuse treatment, but Pretrial's consideration of this factor ignores that he has not used the resources available to him in the past. He has had and continues to have access to both mental health treatment and substance abuse treatment as a veteran, but he has no explanation as to why he declined to previously pursue either even though he had overdosed before.[4] For instance, his veteran's housing (which he lived in from about 2020 to 2023) included mental health *on-site*.[5]

Mr. Mulligan faces more than twenty years of imprisonment. This is daunting, particularly when he has spent no time in prison before. As suggested above, the government has strong evidence against Mr. Mulligan, and his likelihood of conviction is high. For a man comfortable using other aliases and multiple email addresses and phone numbers and living from place to place—and who has undisclosed sums available to him electronically—he has a strong incentive to run and evade taking responsibility for his crimes. Most importantly, his failure to disclose his PayPal and Venmo funds to Pretrial suggests a serious lack of candor and casts doubt on the truthfulness of his representations to the Court.

**B. Defendant is a Danger to the Community**

With respect to danger to the community, the government respectfully suggests that Pretrial's analysis also overvalues the mitigating factors. Although true that he has limited prior criminal history, the government's investigation suggests that Mr. Mulligan has been distributing child pornography for *at least three years*. His conduct goes beyond CSAM possession. He hosted and profited from hosting Zoom meetings sharing child pornography, which fuels the abuse of children around the world. The only proposed condition that seeks to curb this risk is the condition that Mr. Mulligan possess only one internet-capable device. But Mr. Mulligan uses cloud-based services like iCloud. Taking away his devices does not take away his access to CSAM or to platforms where he can share CSAM. Internet devices and communications are ubiquitous, and child pornography can be transmitted and received in

[4] For example, Veterans Affairs has two clinics in San Francisco. *See* https://www.va.gov/san-francisco-health-care/programs/harm-reduction-and-syringe-services-program-ssp/.

[5] https://www.swords-to-plowshares.org/housing-sites/stanford-hotel.

secret—just as Mr. Mulligan did for years. *See United States v. Marigny*, 2020 WL 4260622, at *4 (N.D. Cal. July 24, 2020).

Similarly, release conditions seeking to minimize access to the internet and communication devices "necessarily depend[] on [a defendant's] good faith compliance"—for the simple reason that internet crimes are "not readily susceptible to effective monitoring" and such conditions are "easily circumvented or manipulated[.]" *United States v. Hir*, 517 F.3d 1081, 1093 (9th Cir. 2008); *United States v. Petersen*, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017) (observing the "virtual impossibility of controlling access to the internet and other technologies" in CSAM cases). Mr. Mulligan's lack of candor to the Court with respect to his financial assets suggests that the Court cannot rely on his good-faith compliance to refrain from his predilection for child pornography. Substance abuse treatment will not address his CSAM addition—there are many sober pedophiles who seek out CSAM.

The bail report also cites no history of violence and history of mental health treatment as mitigating factors. But Mr. Mulligan's own father has described him as short-tempered, and Mr. Mulligan was evicted from veteran's housing before for bad conduct. And by Mr. Mulligan's own admission, he was in weekly counseling for only a short time and has elected not to receive any mental health counseling for the past three years (since 2023). It is thus highly unlikely he will complete mental health treatment or substance abuse treatment. Pretrial's proposed conditions are insufficient to mitigate the risk of Mr. Mulligan harming children directly or via the sharing and viewing of child pornography.

## IV. CONCLUSION

The defendant cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community. The Court should order the defendant detained pending trial.

DATED: September 10, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
CHRISTINE CHEN
Assistant United States Attorney